## JOHNSON *et al. v.* HALL *et al.*

1. Where in a suit by heirs at law against an administrator and the sureties on his bond it appeared that a portion of the realty of the estate of the intestate, although appraised with the other property, was not administered, but the heirs being sui juris, and the administrator being one of such heirs, agreed that such realty should not be administered but should be sold at private sale, and accordingly joined in a deed directly conveying the same to a purchaser, it was error to direct a verdict for the plaintiffs against the sureties on the administrator's bond, which included the value of the distributive share to which one of such heirs was entitled in the real estate so conveyed.
2. The fact that the share due such heir was paid over to the administrator for him, does not render the sureties on the administrator's bond liable therefor. Such a transaction in no way involved the administration of the estate, and the share thus paid over to the administrator went into his hands in his individual capacity, and not as the representative of the estate; and hence the sureties on the bond are in no way liable for the failure of the administrator to account for the sum so received by him.

Submitted June 3, — Decided July 8, 1897.

Action on bond. Before Judge Sweat. Appling superior court. September term, 1896.

Suit was brought by D. D. Hall, C. B. Hall, and Mrs. Hopps, as heirs at law of Mrs. Graham, upon the bond of R. E. Hall as her administrator. Upon an agreed statement of facts, the jury found for D. D. Hall $368.85 principal, $98.45 interest, for C. B. Hall $73.85 principal, $20.67 interest, and for Mrs. Hopps $68.75 principal, and $19.25 interest. Defendants moved for a new trial, on the general grounds, and because the court instructed the jury to find in favor of D. D. Hall the amounts before specified. The motion was overruled, and defendants excepted.

From the agreed facts it appears, that R. E. Hall was appointed administrator of Mrs. Graham deceased, on October 13, 1891. Certain land known as the home place was appraised with the other property. The property of the estate, exclusive of the home place (which was sold by the administrator to Carter Brothers) amounted to $1,260.20, out of which he paid $612.32 on account of expenses of administration and debts due by the estate. He is due C. B. Hall and Mrs. Hopps the amounts first above specified, and is due D. D. Hall $164.30 principal and interest, these three amounts being the distributive shares of plaintiffs, exclusive of the proceeds of the home place. R. E. Hall testified: The home place was not administered upon nor sold by him as administrator. The heirs came together, and we signed the deed and sold it to the Carters for $1,200. D. D. Hall was not there, and the Carters turned over to me the amount that was due him for his part of the proceeds. The proceeds consisted of money and notes which were divided out among us. There are five heirs, the share of each being $240. I paid D. D. Hall $25. The reason I did not send him the amount due him was because he was away about three years, during which time I did not know where he was, and I was compelled to use the money on account of sickness in my family. We sold the home place at private sale, because we thought we could get more out of it that way. I got up the trade, and I wrote the heirs what the Carters would give for the place, and they signed the deed. All the proceeds were turned over to me, except the share of Mrs. Roberson (her receipt for which appears in evidence).

In making the sale I acted as the agent of the other heirs, and not as administrator. We all agreed that it should not be administered upon but it should be sold at private sale. I sent a note for $480 and one for $160 to Parker for Mrs. Hopps and C. B. Hall. I have never seen the notes since. They were turned over in settlement of a suit brought by Mrs. Hopps and C. B. Hall, and whatever overplus was to be credited on their distributive shares. Mrs. Roberson received of me in all $325.10, of which $240 was in a note on this home place. That is her receipt for the sum she received from Parker. Deduct $240 from $340, and you will have the amount she received from her distributive share of the estate.

The receipt referred to was introduced, dated January 13, 1893, and acknowledging receipt of $325.10 on part of estate. Also in evidence was the deed from the five heirs to the Carters, conveying the home place in consideration of $1,200.

*E. D. Graham*, by *Harrison & Bryan*, for plaintiffs in error. *S. R. Harris* and *T. A. Parker*, contra.

LITTLE, J. The official report states the facts.

1. The record discloses the fact that there was no necessity of administering on the property known as the "home place" for the purpose of paying the debts of the estate or the cost of the administration. Those expenses were borne by the proceeds arising from the sale of the personal property belonging to the estate. This being true, title to this property at the death of the intestate vested in his heirs at law. Civil Code, § 3353. This title, however, was subject to the right and duty of the administrator to administer the property for the purpose of distribution. Civil Code, § 3081. But no such administration should have been had except for the purposes of distribution, it being assumed there were no debts. *McCook* v. *Pond*, 72 *Ga.* 150; Civil Code, § 3358. The heirs at law in the case at bar, being sui juris, could by agreement among themselves dispense with all further administration of said land and make such a distribution of it as seemed proper to them, and against the exercise of such right the administrator would not have been heard to object. Being thus enti-

tled, as is shown by the record of the case, all the heirs joined in a deed conveying the land to a purchaser at private sale, and the effect of such conveyance was to vest in him the title to the property. It is true that in so doing the heirs, having executed such deed on the suggestion of the person who was the administrator of the estate (himself an heir), entrusted the same to him to be delivered to the purchaser on payment to him, for them, of the purchase-money agreed on; and that having received such purchase-money he failed to pay over the same to the plaintiff. But how could the sureties on the bond of the administrator be held liable for such sum? The property was not administered; it was sold by the heirs personally as their property. The obligation of the sureties on the bond of the administrator is, that the principal shall faithfully discharge his duty as such administrator as required by law. This legal duty is, to ascertain and take into his possession all of the estate of his intestate, to dispose of the same under the orders of the court of ordinary, to pay the indebtedness, and to make returns of his actings and doings as administrator, and to faithfully account for all of said estate, and pay over the same to the persons entitled. To perform all of which duties ample power over the property is given him by law, but no more than is necessary to properly perform them; and as we have seen, if there be no debts, or if the debts be paid from other sources, he can administer the land only for the purpose of distributing the proceeds among those who are entitled to take; and when he is relieved of this duty of distribution by such persons, who are sui juris, the administrator has no further concern therewith. In this case he never administered the land; the heirs at law as owners individually disposed of it, as they had a right at law to do; and the sureties on the bond were in no way liable to them for such land or the proceeds which arose from the sale made by them.

2. But it is said that the administrator received from the purchaser the share of the purchase-money to which the plaintiff was entitled and failed to pay it over to him. Admitting this to be true, it was no duty of the administrator to receive

such money; indeed, as administrator he was not entitled to receive it.    No provision of law would or could make it a part of the *estate of his decedent.*    If he did receive it and it was not a part of his duty as administrator to receive it, his sureties could not be made liable, because their undertaking was that he should faithfully discharge his duties as administrator as prescribed by law.    Necessarily in presenting the deed to the purchaser and receiving the purchase-money, the administrator did not act in his capacity as such, but as an individual and agent of the plaintiff, to whom he is individually liable.    For his acts as an individual his sureties are not bound.    When an executor or administrator receives money to the use of a particular individual, the receipt operates as a specific appropriation of that money, and the executor or administrator must be liable for the money so received in his individual capacity, it having nothing to do with the accounts of the decedent. 7 Am. & Eng. Ency. L. 336, citing Ashby *v.* Ashby; 7 B. & C. 444, 450; Churchill *v.* Bertrand, 3 Q. B. 550; Cronan *v.* Cotting, 99 Mass. 334–336.

The court erred in directing a verdict for the plaintiffs for an amount which included the shares of the purchase-price of the land; and the judgment is therefore

*Reversed.    All the Justices concurring.*